# United States Court of Appeals for the Federal Circuit

05-1026

DOREL JUVENILE GROUP, INC.,

Plaintiff-Appellant,

v.

GRACO CHILDREN'S PRODUCTS, INC.,

Defendant-Appellee.

Todd G. Vare, Barnes & Thornburg, of Indianapolis, Indiana, argued for plaintiff-appellant. With him on the brief were Andrew B. Dzeguze and Daniel P. Albers, of Chicago, Illinois.

Jeffrey H. Dean, Marshall, Gerstein & Borun, LLP, of Chicago, Illinois, argued for defendant-appellee. With him on the brief were Kevin D. Hogg and Matthew C. Nielsen.

Appealed from: United States District Court for the Southern District of Indiana

Chief Judge Larry J. McKinney

# United States Court of Appeals for the Federal Circuit

05-1026

DOREL JUVENILE GROUP, INC.,

Plaintiff-Appellant,

v.

GRACO CHILDREN'S PRODUCTS, INC.,

Defendant-Appellee.

_____

DECIDED:  November 7, 2005
_____


Before NEWMAN, CLEVENGER, and GAJARSA, Circuit Judges.

Opinion for the court filed by Circuit Judge CLEVENGER.  Dissenting opinion filed by Circuit Judge NEWMAN.

CLEVENGER, Circuit Judge.


Dorel Juvenile Group, Inc. ("Dorel") sued Graco Children's Products, Inc., ("Graco") for patent infringement, seeking a jury trial.  Dorel is the exclusive licensee of U.S. Patent No. 6,550,862 ("the '862 patent") and continuing U.S. Patent No. 6,612,649 ("the '649 patent"), both directed to a child's car seat assembly having a retractable cup holder.  Graco conceded that its accused car seat embodies all of the elements of the asserted claims, except for certain aspects concerning the seat and base assembly, i.e., a base removably attached to a seat.

On cross-motions for summary judgment, the United States District Court for the Southern District of Indiana ruled for Graco and against Dorel, holding that under the district court's interpretation of the pertinent claim terms, Graco's car seat does not infringe the '862 and '649 patents. See Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc., No. 03-1273 (S.D. Ind. Sept. 9, 2004) ("Summary Judgment"). Dorel timely appealed the final judgment of the district court. Because there exists a question of fact as to whether Graco's car seat infringes the patents, we vacate the district court's summary judgment and remand the case for further proceedings.

I

Claim 1 of the '862 patent covers a juvenile seat assembly comprising, inter alia, "a seat, and . . . a base, the seat being removably secured to the base." '862 patent, col. 6, ll. 2-14. Claim 1 of the '649 patent likewise covers a juvenile seat assembly comprising, inter alia, "a seat, [and] a base removably attached and arranged to support the seat." '649 patent, col. 6, ll. 2-6.

Graco's accused seat consists of two plastic parts. The top portion provides a relatively flat surface for a child to sit on, and the bottom portion is a structure upon which the top portion fits. The two parts are firmly held together by screws. In one iteration of the accused product, the screws are of the ordinary variety, removable with ease by use of a common screwdriver. In another iteration of the accused product, Graco uses so-called "one-way" screws. A one-way screw can be "screwed down" with an ordinary screwdriver, but a different type of screwdriver is required to loosen and remove the tightened screw. Ordinary screwdrivers and one-way screwdrivers can be purchased in hardware stores, among other places.

II

Upon granting Graco's motion for summary judgment of noninfringement, Summary Judgment at 1, the district court first interpreted the terms "removably attached" and "removably secured," id. at 5-6. Neither party argued that a specialized meaning of the terms existed in the art of juvenile car seat design. The district court thus attributed to the terms their ordinary meaning and concluded that they require that the seat and base in the claimed invention "will be detached or unsecured on some occasion during the lifetime of the product." Id. at 5. In other words, the district court determined that the claimed product is designed to come apart. The district court concluded, however, that the claim language does not require that the seat and base come apart during normal usage. Ease of separation is not a limitation on claim scope, as the district court opined, because the claim language does not recite "easily" removable or removable "relatively easily." Id. at 6. Indeed, the district court expressly and emphatically rejected any notion that the claims require "ease of separation" of the seat from the base. "Removably attached" and "removably secured" mean only that the seat and base "are designed at some time or another to come apart." Id. at 5.

The district court further opined that the claim terms "removably attached" and "removably secured" "carry with them an implication that the detachment or unsecuring process not do violence to the seat." Id. The seat must therefore be usable as a seat upon separation from the base. In sum, the district court held that the claims cover a structure that includes a seat and base "affixed together in a manner that contemplates that the seat may be removed from the base such that the seat remains functional." Id. at 6.

Turning next to the claim term "base" and to the surrounding claim language, the district court determined that the base is "the structure that props up the seat." Id. Finally, the district court interpreted the claim term "seat" as "the structure intended to be sat in or on," id., a structure the district court thought necessarily to be separate from the base.

The district court applied this construction to the accused Graco products and found no literal infringement because the accused products were found not to have a seat separate from the base, as claimed in the asserted patents, and because the two parts of the accused products were found to be an integrated unit. Id. at 7. In short, the district court held that Graco's two-part structure is integral, meaning that it lacks a seat and base as separate, stand-alone structures.

III

We review issues of claim interpretation independently, Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc), and test the scope of claim language with primary reference to the specification, of which the claims are a part, Phillips v. AWH Corp., 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (en banc).

The district court correctly interpreted "removably attached" and "removably secured." The specifications of the patents in suit are mainly directed to the claimed cup holder feature of the inventions, and there is little reference to the concept of the removability of the seat from the base. See '862 patent, Abstract ("A juvenile vehicle seat is provided including a cup holder. The cup holder is movable between a retracted position adjacent the seat and an extended position spaced from the seat."); '649 patent, Abstract (same). The specifications speak of "means for coupling" the seat

bottom to the base, but expressly state that such means are not shown in the drawings. '862 patent, col. 2, ll. 52-53; '649 patent, col. 2, ll. 55-56. Further, the "seat base is configured to releasably couple to the seat bottom." '862 patent, col. 1, ll. 27-29; '649 patent, col. 1, ll. 31-33.

To impart "ease of separation" to the claims would require adding the words "easily" or "relatively easily" to the "removable" limitations, as the district court noted. Nothing in the patent's specification suggests "ease of separation." If anything, the specification teaches the meaning given to the "removable" limitations by the district court. This is so, because the only reference to what might be placed in the patented cup holder is shown in Figure 4 as a "COLA." Given the configuration of the cup holder and the seat's base, spilled cola would surely invade the bottom portion, where it could attract bees, hornets and other unwelcome insects. The occasional need to unscrew the top portion from the bottom portion to clean away spilled cola, or other matter that could find its way from the cup holder into the bottom portion, comports with the district court's holding that the seat and base merely be capable of separation.

As the district court was no doubt aware, "ease of separation" is a common trait of many iterations of modern infant car seats. Simple observation on the public streets of parents removing children from cars reveals two-part infant car seats, whereby the base portion remains in the car while the seat portion is removed with the child still strapped in. This seat portion can then be easily secured into an infant stroller and later removed from the stroller to be reattached to the base portion that had remained in the car. While this may be the preferable two-part car seat for use with infants, the patents in suit do not require that the seat be "easily removable" from the base. There simply is

no reference whatsoever in the specifications to "ease of release" or "ease of separation," no indication that the patent is directed to a product comprising a base that, during everyday usage, remains in the automobile while the user removes the seat and the child.

In short, the "removable" limitations, as understood through the plain meaning of the claim language and as tested by information in the specification, per Phillips, are just as the district court held. The seat and base can be separated "in a manner that contemplates that the seat may be removed from the base such that the seat remains functional." Summary Judgment at 6.

The district court also correctly construed the terms "seat" and "base" to require two separate structures—"the structure intended to be sat in or on" and "the structure that props up the seat," respectively. Id. The drawings in the patents certainly confirm the district court's understanding that the seat and the base are two separate structures held together by some means. See '862 patent, Figs. 1-4; '649 patent, Figs. 1-4. We thus discern no error in the district court's interpretation of the key claim terms.

IV

We, however, take issue with the district court's conclusion, on cross-motions for summary judgment, that the accused Graco juvenile car seat cannot infringe as a matter of law because it lacks a seat separate from a base and, at most, includes a base that is integral to the seat. See Nazomi Communications, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1367 (Fed. Cir. 2005) ("A summary judgment motion is proper if there are no genuine issues of material fact, while viewing the facts in a light most favorable to the non-moving party."). The district court has invaded the province of the

finder of fact, here a jury requested by Dorel, in deciding the infringement question. <u>See</u> <u>Bai v. L & L Wings, Inc.</u>, 160 F.3d 1350, 1353 (Fed. Cir. 1998) (stating that the "determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact").

The accused products comprise a top structure and a bottom structure, each easily removable from the other by an ordinary or one-way screwdriver, such that they are "removably attached" or "removably secured". However, whether the top and bottom structures of the Graco products are in fact the claimed "seat" and "base" of the asserted patents, such that the top structure is capable of functioning as a "seat" upon being removed from the bottom structure, is a question of fact that cannot be determined on summary judgment. We therefore vacate the summary judgment of noninfringement and remand the case to the district court to determine, as a matter of fact, whether the accused products meet the seat and base limitations of the asserted claims, and to decide any remaining issues.

<u>VACATE AND REMAND</u>

# United States Court of Appeals for the Federal Circuit

05-1026

DOREL JUVENILE GROUP, INC.,

Plaintiff-Appellant,

v.

GRACO CHILDREN'S PRODUCTS, INC.,

Defendant-Appellee.

NEWMAN, <u>Circuit Judge</u>, dissenting.

I respectfully dissent. The district court correctly construed the term "removably attached/secured" to mean "removably," not its opposite, as the panel majority holds. The Graco carseat is a permanent assembly whose molded parts are permanently screwed together with six "one-way" screws. Upon unscrewing and disassembly, the Graco seat becomes a collection of loose parts, the cup holder incapable of its function of supporting a cup. The Graco carseat is clearly not a base and seat assembly as in the Dorel patents, whereby the seat can be reversibly slipped from its mooring to carry its infant passenger. Removal of the top part of the Graco carseat (for example, to carry the infant into grandma's house), would require removing the upholstery, upending the carseat (requiring removal of the entire assembly from its crash-proof installation), and removing the six

unremovable screws with the special tool needed for removing unremovable screws -- and then repeating the operation in reverse upon returning to the car with the top part and its infant cargo. The panel majority's redefinition of the patented invention to cover such a carseat is devoid of support.

The Dorel patents include drawings of the patented carseat, showing the separate base carrying the cup holders:



The specifications show that the seat and base are distinct structures that are designed to be manually released and reattached, as the district court found. The seat 12, which includes a "seat bottom" and a "seat back," is described as "releasably coupled" to the base 16, which includes a "front," a "rear," a "pair of side walls," and a "cupholder receptor 38." The term "releasably" is also used to describe the manually adjustable cupholder 18, as "releasably held" and "releasably locked" by tabs 22.

In striking contrast, the Graco carseat is a unitary structure without a removable seat portion:



TurboBooster Model No. 8491          TurboBoster Model No. 8496

The panel majority has misperceived the Dorel structure, perhaps because the seat of the TurboBooster is molded in two segments, whose engineering drawings are shown in the record as follows:

"Seat Top"                "Seat Bottom"



These molded parts are not "removably attached"; they are permanently assembled, using six permanent screws set in recessed indentations. Graco's "one-way" screws can be unscrewed only with a special tool called the "Un-Do-It" tool. Although the majority states that the tool "can be purchased in hardware stores," that is not the general experience, and

05-1026                          3

Dorel's expert testified that he could locate such a tool only after searching the internet for the term "one-way screw."

The panel majority errs in construing the Dorel claims to a removably attached seat and base, to encompass a unitary structure that does not have a separate and separable seat and base. The Dorel prosecution history itself negates such a construction. The original claims, broadly referring to any "juvenile vehicle seat" with a retractable cup holder, were rejected as anticipated by O'Brien U.S. Patent No. 3,637,184, which describes a unitary seat with a retractable cup holder. In response, the claims were amended to "further comprise" a "seat" that is "removably secured" or "removably attached" to a "base." The district court correctly construed the claims as requiring a removable seat and separate base. See Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*) ("the prosecution history can [make] the claim scope narrower than it would otherwise be"). Indeed, Dorel in its motion for summary judgment observed that the O'Brien patent "discloses a single, indistinct piece, in which no seat could be identified separately from a base, much less a seat removably attached or removably secured to a base." Neither Dorel nor the panel majority can recapture what Dorel surrendered during prosecution: a single indistinct piece without an identifiable, removable seat portion.

The district court, referring to the prior art, correctly rejected "the one piece, stand alone base/seat" that is adopted by the panel majority as covered by the Dorel claims. The district court construed "base" to mean a structure that not only "props up the seat" and "upon which the seat sits," but also is "separate from the seat." The district court correctly construed "seat" to mean not only a structure "intended to be sat in or on," but also used "in conjunction with but not as part of the base." The district court further construed

"removably attached/secured" to require that the base and seat be "designed at some time or another to come apart." On these definitions and the undisputed structure of Graco's carseat, the district court correctly recognized that no reasonable jury could find that the Graco seat device has a seat that is removably attached to a separate base. As the district court observed, the bottom piece of the Graco assembly "is an integral part of the seat," not removably attached or secured to the seat.

The panel majority ignores this central issue and remands for findings on a non-issue: whether "the top structure is capable of functioning as a 'seat' upon being removed from the bottom structure." Maj. op. at 7. That aspect is irrelevant. The question is not whether the top structure is "capable" of being sat upon; the question is whether there is a seat removably attached to a separate and distinct base.

The panel majority also holds as a matter of law that the "removably attached" and "removably secured" limitations are met, based on its construction requiring only that the seat and base "be capable of separation." Maj. op. at 5. That is not the description of the invention. Of course even "one-way" screws can be laboriously removed and the structure disassembled; indeed, it is difficult to imagine any assembly not "capable" of being disassembled. The district court correctly required that the seat and base be "affixed in a manner that contemplates" removal; that is, the parts must be "designed at some time or another to come apart." Summary Judgment at 6-7. The record contains no suggestion that Graco's carseat is designed to come apart. The user manual for Graco's product negates disassembly, admonishing the user not to modify the seat or use the seat without all of its parts, warning that failure to properly use the seat "increases the risk of serious injury or death." Even on the panel majority's speculation that the Graco structure might be

disassembled for cleaning, the "removably attached/secured" requirement of the Dorel claims is not met. The specification describes the base as being "releasably coupled" to the seat; this is not compatible with the need to purchase and use a special tool to unscrew one-way screws covered by upholstery.

The panel majority complains that the patent does not discuss the advantage of separating the Dorel seat from its base, stating that "there is no indication that the patent is directed to a product comprising a base that, during everyday usage, remains in the automobile while the user removes the seat and the child." Maj. op. at 5-6. However, such separable carseats were in the prior art at the time the Dorel applications were filed; the patents are directed primarily to the cup holders, not the seat and base structure. See '862 patent, col. 1, ll. 9-10 (describing the invention as a retractable cup holder in a "conventional juvenile vehicle seat" that is "generally known" and in "widespread use"); see also Figures 1 and 2 of Dorel's patents, supra. The record contains other patents by the inventor of the Dorel patents, such as U.S. Patent No. 6,554,358, which is directed to a seat removably attached to a base, and which cites eleven references to seat and base combinations that are manually separable. In addition, Graco points to Department of Transportation regulations, with which all carseats must conform, that describe carseat components that "can only be removed by use of a tool" as "permanently attached." 49 C.F.R. §§571.213 S5.9, 571.225 S15.1.2.1(f). The panel majority's interpretation of "removably attached" and "removably secured" as requiring only that the structure be "capable" of disassembly, however laborious the mechanics, is contrary to the prior art, contrary to usage in the field, and contrary to federal regulation.

The majority's approach to claim construction strains this court's attempts to restore consistency of analysis to patent claims by placing the claims in the context of the specification.  See Phillips, 415 F.3d at 1321 ("The risk of systematic overbreadth is greatly reduced if the court instead focuses at the outset on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down").  The panel majority construes the Dorel claims as encompassing a different invention from that described and prosecuted.  From this incorrect claim construction, leading the court to an incorrect decision, I must, respectfully, dissent.