**Ivan G. RICE, Plaintiff**

v.

**HONEYWELL INTERNATIONAL, INC. and Rolls–Royce, Plc., Defendants,**

v.

**Northrop Grumman Corp., Third–Party Defendant.**

**Civil Action No. 6:05cv330.**

United States District Court,
E.D. Texas,
Tyler Division.

June 28, 2007.

Douglas Harold Elliott, Aaron Dale Perkins, Neil Philip Morrissette, Patterson & Sheridan, LLP, Houston, TX, Otis W. Carroll, Jr., Ireland Carroll & Kelley, Charles Ainsworth, Robert Christopher Bunt, Robert M. Parker, Parker Bunt & Ainsworth, P.C., Deborah J. Race, Ireland Carroll &

Kelley, Tyler, TX, Andrew Wesley Spangler, Elizabeth L. Derieux, Sidney Calvin Capshaw, III, Brown McCarroll, Longview, TX, Franklin Jones, Jr., Jones & Jones, Marshall, TX, for Plaintiff.

Darle M. Short, Eric W. Schweibenz, James A. Oliff, John W. O'Meara, Richard E. Rice, Robert S. Cabral, Oliff & Berridge, Alexandria, VA, Walter Thomas Henson, Ramey & Flock, Tyler, TX, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

DAVIS, District Judge.

The above entitled and numbered civil action was referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge (Docket No. 229) containing his recommendation concerning the disposition of Defendant Rolls Royce's Motion for Summary Judgment of Non–Infringement of U.S. Patent No. B1 4,896,499 ("the '499 patent") (Docket No. 137). Plaintiff Ivan G. Rice ("Rice") has filed objections to the Report and Recommendation ("Report") primarily arguing that: (1) an incorrect standard was applied in granting summary judgment of non-infringement, (2) the Report overlooks competent evidence that defeats summary judgment of non-infringement, and (3) the Report does not adhere to the claim constructions set forth in the Memorandum Opinion and Order on claim construction. For the reasons discussed below, the Court is of the opinion that the findings and conclusions are correct and the Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of the Court.[1]

## ANALYSIS

### I. The Objection to the Standard Applied on Summary Judgment

■ Rice objects to the Report on grounds that, in reaching the conclusion of non-infringement, the Report engages in improper fact-finding by applying the construed claim limitations to the accused WR–21 engine. According to Rice, even if there is no dispute as to the structure of the accused device, it is improper to grant summary judgment when there are conflicting arguments as to whether a claim limitation does or does not find response in the accused device. Rice relies upon *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363 (Fed.Cir.2004) and *Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc.*, 429 F.3d 1043 (Fed.Cir.2005).[2]

In the Report, the summary judgment standard applied is that of whether a reasonable jury could find that the claim limitation as construed by the Court is found in the accused device. *See* Report at 7, 14. In *International Rectifier Corp.*, the Federal Circuit reviewed a grant of summary

---

1. Somewhat oddly, Rolls–Royce has also filed objections (Docket No. 231) to the Report granting its motion for summary judgment. The Court finds these objections to be without merit and said objections are overruled. Rolls–Royce has also filed objections (Docket No. 230) to the Magistrate Judge's report denying its Motion for Summary Judgment of Invalidity (Docket No. 228). The Court likewise finds these objections to be without merit. Accordingly, the Court adopts that Report as the findings and conclusions of the Court and denies Rolls–Royce's invalidity motion.

2. There is no discussion in these cases of what Rice characterizes as a proposition that "application of claim construction is always a question of fact." *See* Rice Objections at 3, 6. The cases only state the fundamental rule that a second step in the infringement analysis is a comparison of properly construed claims to the alleged infringing device.

judgment of infringement.[3] The same standard was applied. *Int'l Rectifier Corp.*, 361 F.3d at 1369 ("Because infringement is a question of fact, infringement is properly decided on summary judgment only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" (citation omitted)). Rice maintains that despite that commonly understood premise, *International Rectifier Corp.* nevertheless instructs that conflicting arguments as to whether a claim limitation is or is not present in the accused device precludes summary judgment. Rice misreads *Int'l Rectifier Corp.*

In *International Rectifier Corp.*, the Federal Circuit first reversed the district court's claim construction of the terms "polygonal" and "annular." The record on summary judgment did not contain evidence as to whether IXYS's devices included the "polygonal" and "annular" limitations, *as properly construed. Id.* at 1375. The Federal Circuit's statement cited by Rice of "Here, in contrast, only the structure of IXYS's product has been stipulated to for summary judgment purposes, not the factual determination of whether that product meets one or another claim construction" is made in the context of *General Mills, Inc. v. Hunt–Wesson, Inc.*, 103 F.3d 978 (Fed.Cir.1997). As the Federal Circuit points out, in *General Mills*, the record on summary judgment included a stipulation as to how each of two competing claim constructions would apply to the undisputed structure of accused infringing device. Thus, in *International Rectifier Corp.*, the Federal Circuit was only making clear that the record on summary judgment was not developed as to evidence of the existence of the "polygonal" and "annular" limitations in the IXYS products under the new claim constructions.

Based on a misreading of *International Rectifier Corp.*, Rice contends that "*International Rectifier* applies here, since the factual determination of whether the WR–21 meets *either of the claim constructions* has not been stipulated to, and in fact is vigorously disputed." *See* Rice's Objections at 4 (emphasis added). There is no "either of the claim constructions." There is only a single claim construction, although Rice attempted to invoke a claim construction other than that set forth in the Memorandum Opinion and Order on claim construction.[4] The Report considers the evidentiary record on summary judgment against the claim construction set forth in the Memorandum Opinion and Order on claim construction.[5] Thus, *International Rectifier Corp.* is inapplicable, at least in the portion thereof relied upon by Rice.

In *International Rectifier Corp.*, a denial of IXYS's motion for summary judgment of non-infringement was also under review. *Int'l Rectifier Corp.*, 361 F.3d at 1375. The Federal Circuit reversed the district court's claim construction as to the term "adjoining." Under the new claim construction and undisputed evidence as to

---

3. Rice incorrectly represents that a grant of a motion for summary judgment of non-infringement was under review in *Int'l Rectifier Corp. See* Rice Objections at 3.

4. Rice based a finding of the presence of the "counterflow limitation" in the WR–21 on a claim construction that is satisfied by any counterflow between the coolant and the airflow anywhere, including only that within the return pan of the WR–21 intercooler.

5. The counterflow limitation was construed to require that the air flow and the coolant through the intercooler flow in thermal contact and in opposite direction through a heat exchanger. The Report explains why the construction can only be understood to mean that *all* the air flow and coolant flow within the heat exchanger that are in thermal contact must be in counterflow. *See* Report at 7 n. 4

the structure of the accused infringing devices, the Federal Circuit concluded that there could be no infringement. The Federal Circuit remanded with instructions to enter a judgment of non-infringement in favor of IXYS. *Id.* This portion of *International Rectifier Corp.* is applicable here and supports the grant of Rolls–Royce's motion for summary judgment of non-infringement in the Report.[6]

Rice's reliance on *Dorel* is similarly misplaced. Rice represents *Dorel* as involving a similar dispute wherein the Federal Circuit precluded summary judgment of non-infringement. In what manner *Dorel* is similar, Rice does not articulate. After finding that the district court had properly construed the relevant claim terms, the Federal Circuit in *Dorel* turned to the summary judgment evidence. *Dorel*, 429 F.3d at 1047. The claim was directed to a child's car seat. *Dorel*, 429 F.3d at 1044–45. The key claim terms specified separate "seat" and "base" structures, wherein the "seat" structure when removed continues to function as a seat for a child in, for example, an infant stroller. *Id.* at 1045. The accused product was a child's car seat assembly having a top structure and a bottom structure, which were removable from one another. *Id.* Because the top and bottom structures of the accused product formed an integrated unit, the district court held that it lacked the limitation of a "seat" as a separate stand-alone structure. *Id.* The Federal Circuit reversed on the basis that the district court failed to assess whether the top structure after removal was capable of functioning as a "seat."[7] *Id.* at 1047. Again, *Dorel* is merely illustrative of a situation where the evidentiary record on summary judgment was not sufficiently developed.

The Report relies upon *K–2 Corp. v. Salomon, S.A.*, 191 F.3d 1356 (Fed.Cir. 1999) and *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573 (Fed.Cir.1996). Rice asserts that these authorities are inapplicable. However, the recitation of the cases provided by Rice demonstrates the direct applicability of them. Rice Objections at 5. In *K–2 Corp.*, the structure of the accused device as having a removable screw was not in dispute, whereas the claim construction required an "unremovable" connection. *K–2 Corp.*, 191 F.3d at 1365–66. In *Athletic Alternatives*, there was no dispute that the accused racket had only two offset distances, whereas the claim construction required three offset distances. *Athletic Alternatives*, 73 F.3d at 1579.

Rice fails to present a basis for the objection to the Report as failing to apply the correct summary judgment standard. The Court finds that the Report does not engage in impermissible fact-finding. Also, the Court does not find that the Report makes a comparison of a construed claim limitation to the accused WR–21 structure other than on the basis of the evidentiary record presented and as a matter of determining whether a reasonable jury could find, based on the evidentiary record presented, that a claim limitation, as construed by the Court, is or is not found in the accused WR–21.

Rice's objection is overruled.

II. *The Objection That the Report Overlooks Competent Evidence That Defeats Summary Judgment of Non-infringement as to the Counterflow Limitation*

■ Rice's objection is that there exists sufficient evidence to require submission of

---

**6.** In fact, according to Rice's objection here, the Federal Circuit engaged in fact-finding and substituted its findings for those of the jury.

**7.** Of interest, the dissent referred to this as a "non-issue." *Dorel*, 429 F.3d at 1049.

the question of infringement as to the counterflow limitation to the jury. Rice argues that the Report is in error in concluding otherwise.[8] Rice's evidence is again that the air flow and the coolant flow are in opposite directions within the return pan of the intercooler. Rice Objections at 10. Indeed, all of Rice's evidence of infringement is directed to the air flow and coolant flow only within the return pan of the intercooler.

Based on the evidence of flow within the return pan, Rice then postulates that "A reasonable jury could interpret the claim construction (which uses the definite article 'the') *in the context of the claim language itself,* which does *not* use the definite article, and arrive at the conclusion that the air flow and the coolant flow are 'in counterflow' if at least a portion of the air flow and the coolant flow are in an opposite direction." Rice Objections at 9 (emphasis in original). The flaw in Rice's objection is that determinations as to the

meaning of the claim language is not within the province of the jury. Giving the jury an instruction as to claim construction does not open a forum for it to discuss the meaning of the claim construction. Rice's objection violates the fundamental premise of *Markman* that claim construction is a question of law for the court to determine.

Inherent in Rice's objection as to the Report's conclusion that the counterflow limitation is not satisfied is a challenge to the claim construction that requires "all" of the air flow and all of the coolant flow to be in opposite directions. Rice particularly challenges the Report's conclusion that the '499 patent, particularly Fig. 1, does not allow for anything else. Rice Objections at 6–9. Rice bases its challenge on an annotated diagram of Fig. 1 and the characterization of air flow "inside the intercooler." Defendant Rolls–Royce submitted a color version of Rice's annotated diagram. For clarity, Rolls–Royce's color diagram is presented as follows:

The construction of the counterflow limitation in the Memorandum Opinion and Order on claim construction was:

the air flow and the coolant through an intercooler *flowing in thermal contact*

and in opposite direction through a heat exchanger so that the temperature of the air flow through the intercooler closely approaches the temperature of the coolant at its inlet to the intercooler.

---

**8.** Rice also argues that the Report at page 6 makes an "inherently factual" conclusion that the evidence does not show that the counterflow limitation is satisfied by the counterflow at the return pan. Rice Objections at p. 6. The Report is merely doing what the Federal

Circuit did in *International Rectifier Corp.,* in reversing the denial of IXYS's motion for summary judgment of non-infringement and directing entry of judgment of non-infringement. *Int'l Rectifier Corp.,* 361 F.3d at 1375.

(emphasis added). Thus, in the circled areas of Fig. 1, which are not colored, the air flow and the coolant are not in thermal contact. Where the diagram is colored red and blue, there is thermal contact. The claim construction is not merely anywhere "inside the intercooler," which is the premise for Rice's objection.

■■■ In addition to the diagram of Fig. 1, Rice advances prior art heat exchanger configurations that are labeled "counterflow" and "cross-counterflow" in support of an argument that in them only a portion of the air flow and coolant oppose one another. The characterizations given by the prior art, even though appearing in the prosecution history, are not relevant. Those prior art heat exchanger configurations are not part of the written description of the '499 patent specification. Moreover, the only heat exchanger configuration shown and described in the written description of the '499 patent specification is that of Fig. 1, wherein all of the air flow and coolant flow that are in thermal contact are in opposite directions. The written description does not indicate that any other heat exchanger configuration would provide for the temperature of the air flow to closely approach the temperature of the coolant. The only structure described as providing for that is the heat exchanger arrangement diagramed in Fig. 1. The claim construction must comport with the written description. *See Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377 (Fed. Cir.1999); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258 (Fed.Cir.2001).

■■■ Rice's final attempt to identify evidence of infringement under the requirement that "all" air flow and coolant flow are in opposite directions is to urge comparison between Fig. 1 of the '499 patent and a schematic diagram of the WR–21 intercooler presented in Exhibit M to the Branch Declaration. First, a comparison of the drawings of a patent to an accused device is improper, because infringement is based upon a comparison of the claim limitations to the accused device. Second, Exhibit M is merely a generalized representation of a heat exchanger without characterization of the actual configuration of the WR–21 intercooler. Exhibit M is far from being "compelling" evidence of infringement. Rice Objections at 10.

Rice's objection is overruled.

III. *The Objection That the Report Overlooks Competent Evidence That Defeats Summary Judgment of Noninfringement as to the Design Rule Limitation*

■■■ Contrary to Rice's statement of objection, the Report does not conclude that the WR–21 lacks the design rule limitation because of the design methodology employed by Rolls–Royce.[9] The Report clearly frames the issue as a matter of structure.[10] Nowhere does the Report contain any expression that the conclusion of non-infringement of the design rule limitation was reached based upon whether there had or had not been a resizing of either the high pressure compressor inlet

---

9. Rice Objections at 11.

10. "Rice as the non-moving party and having the burden of proof on infringement must offer evidence that the accused infringing WR–21 engine has a high pressure compressor (HPC) with an inlet flow area that is sized (1) directly proportional to the low pressure compressor (LPC) outlet flow area and (2) inversely proportional to the absolute temperature ratio of the temperature of the airflow exiting the low pressure compressor to the temperature of the air flow from the intercooler passed to the inlet of the high pressure compressor ($T_{lpc} / T_{hpc}$)." Report at 7–8.

flow area or the low pressure compressor inlet flow area.

However, the design methodology used is probative evidence as to the resulting structure of the WR–21 and whether the design rule limitation is present in the WR–21 engine. The written description of the '499 patent indicates as much in explaining the structure of Fig. 4 in the context of a design methodology that results in compliance with Boyle's Law according to "this invention."[11] Moreover, the portion of the design rule limitation specifying inverse proportionality of the HPC inlet flow area to $T_{lpc} / T_{hpc}$ necessarily requires compliance with Boyle's Law.[12] Thus, an indicia of infringement of the design rule limitation is evidence that an intercooled engine has been designed to adhere to Boyle's Law.[13] In other words, if the evidence was that the WR–21 had been designed to adhere to Boyle's Law, such evidence could raise a genuine issue of material fact. The Report merely identifies that there is no evidence that Rolls–Royce designed the WR–21 in adherence to Boyle's Law.[14] In fact, the evidence is to the contrary. Rice's Additional Objection # 4 is, therefore, necessarily overruled. *See* Rice Objections at 18.

Quite clearly, the Report addresses non-infringement of the design rule limitation on the basis of structure. The Report first concludes that the first aspect of the design rule limitation is met on the basis that the initial design conditions included a direct proportioning of the HPC inlet flow area and the LPC outlet flow area. The focus then becomes whether the second aspect of the design rule limitation is met. That is, the Report focuses on whether the operational parameters of the WR–21, selected as set forth in the Branch Declaration to account for the change in temperature and density of the air flow attributable to the intercooler, are such that for a predetermined operating condition of the intercooler the relationship $T_{lpc}/T_{hpc} = 1.64$, which is the same as $A_{lpc} / A_{hpc}$. The Report then addresses Rice's evidence on this point.

The Report concludes that Rice's proffered evidence is insufficient to demonstrate a genuine issue as to whether, for a predetermined operating condition of the intercooler, the relationship $T_{lpc}/T_{hpc} = 1.64$, which is the same as $A_{lpc} / A_{hpc}$, is met in the WR–21. Rice objects to this conclusion. In support of the objection, Rice contends that the evidence shows that the WR–21 LPC (IPC) is "capable" of delivering air flow at a temperature "that ranges up to 589°K" and that the intercooler is "capable" of cooling that air flow to a temperature of 318 °K, which provides $T_{lpc}/_{thpc} = 1.85$. Rice then submits that a "range" including 1.64 is established. This range of temperature relationships according to Rice are "predetermined, since they were known in advance." Rice Objections at 13.

---

11. '499 Patent at col. 8, line 48 to col. 9, line 27.

12. Even Rice agrees that the equation expressing the design rule limitation is derived from Boyle's Law. Rice Objections at 25 (Additional Objection # 14).

13. The Report acknowledges the prosecution history wherein Rice distinguished the Quandt prior art on the basis of its teaching to change compressor speed of rotation in order to obtain adherence to Boyle's Law. However, the Report does not rest its conclusion of non-infringement on Rice's apparent disclaimer of changing compressor speed of rotation as being within the scope of the design rule limitation.

14. The "red car" analogy offered by Rice is not instructive as color is not a structural characteristic of a car.

■ Before addressing Rice's contentions and evidence as to the alleged capabilities of the WR–21, consideration must first be given to Rice's view of the claim construction that "reasonable interpretation of the phrase 'predetermined' is 'known in advance'" and that according to patent parlance "a reasonable interpretation of the phrase 'a predetermined operating condition' is at least one 'predetermined operating condition.'" Rice Additional Objection # 7 at 20. First, that patent claim parlance provides for the article "a" to mean "one or more" is of no moment here. Second, the inclusion in the claim construction of "for a predetermined operating condition of the intercooler" was explained in the Memorandum Opinion and Order on claim construction to be required based upon the disclosure in the written description that the invention is premised on the intercooler being sized to effect a specified exit temperature under specified environmental conditions for a particular approach temperature, citing to the '499 patent at column 16, lines 54–57. Furthermore, see column 9, lines 16–26 of the '499 patent, wherein application of the design rule is made based on a predetermined operating condition of the intercooler. Thus, regardless of Rice's objection as to the weight accorded to the Rice Declaration, Rice does not advance that evidence in the context of the design rule limitation, as construed in the Memorandum Opinion and Order on claim construction. Moreover, contrary to Rice's belief, the claim construction taken in the context of the Memorandum Opinion and Order on claim construction is only reasonably interpreted to mean a single, particular operating condition. Rice's objection is overruled on the basis of advancing an erroneous claim construction in support, regardless of the treatment of the evidentiary record.

In Additional Objection # 9, Rice objects to the weight given to the Wilson Declaration and to the Rice Declaration, which were found to be "merely conclusory" or lacking "factual foundation." Specifically, Rice objects that the Report ignores Branch Declaration Exhibit T, p. 6, as referenced in paragraph 36 of the Rice Declaration. Rice Objections at 21–22. In paragraph 36 of the Rice Declaration, Rice is purporting to support a statement as to "specified *operating* temperatures of WR–21 intercoolers (emphasis added)." Rice relies upon Branch Declaration Exhibit T *only* as evidence of a lower limit for air exiting the intercooler. Branch Declaration Exhibit T, however, indicates boundary conditions for the coolant temperature range and not for a temperature of air exiting the intercooler at a predetermined operating condition. Branch Decl., Ex. T, at 6. Branch Declaration Exhibit T says nothing whatsoever about a specified operating temperature of air exiting the intercooler.

Rice's objection further includes a statement that "Branch Declaration Exhibit T plainly discloses that the intercooler is rated for an inlet temperature of 176.85°C, which is 450°K." Rice Objections at 22. However, paragraph 36 of the Rice Declaration does not rely upon Branch Declaration Exhibit T for the inlet temperature (*i.e.*, air entering the intercooler); Rice's reliance is only as to air exiting the intercooler. To the extent Branch Declaration Exhibit T indicates an inlet temperature rating, such rating is indicated for engine operation when the intercooler is inoperative. Paragraph 36 of the Rice Declaration only relies upon Exhibit E for support of the inlet temperature rating of 450°K. Therefore, the Report concludes that Rice's opinion of $T_{lpc}/T_{hpc} = 1.65$ was

without an adequate factual foundation.[15] Rice's opinion is not supported by the evidence he relies upon. Furthermore, no inference can be drawn from that evidence that, even if the intercooler inlet and outlet temperatures of 450°K and 273°K, respectively, are realized in operation of the intercooler, that those temperatures would exist simultaneously such that $T_{lpc}/T_{hpc} = 1.65$ is realized.

The Report properly evaluated paragraph 36 of the Rice Declaration and is correct in concluding that paragraph 36 of the Rice Declaration is insufficient to raise a genuine issue of material fact as to whether, for a predetermined operating condition of the intercooler, the relationship $T_{lpc}/T_{hpc} = 1.64$, which is the same as $A_{lpc}/A_{hpc}$, is met in the WR–21.[16] The Report did not ignore Branch Declaration Exhibit T. Moreover, paragraph 36 of the Rice Declaration did not in any event rely upon Branch Declaration Exhibit T for the inlet temperature rating of the WR–21 intercooler. All reasonable inferences possible as to paragraph 36 of the Rice Declaration were drawn in Rice's favor. There simply were no inferences that could be drawn to raise a genuine issue of material fact.

The objection set forth in Rice's Additional Objection # 9 is overruled.

In Additional Objection # 10, Rice objects to the conclusion in the Report that Exhibit E relied upon in paragraph 36 of the Rice Declaration is not probative as to an actual low pressure compressor air flow temperature applied to the intercooler of the WR–21. However, the statement of Rice's objection is to the effect that Exhibit E is "probative as to the capabilities of the intercooler to withstand high temperatures" and "such evidence is probative as to the capabilities of the intercooler to withstand high temperature IPC delivery air flow." Rice Objections at 22. However, this objection does not meet the substance of the statement in the Report. Again, Rice attempts to supplement paragraph 36 of the Rice Declaration with reliance on Branch Declaration Exhibit T when such reliance is not present. But, in addition to being an inappropriate supplementation of the record, Rice's objection once again fails because Branch Declaration Exhibit T, as discussed above in regard to Additional Objection # 9, does not support, nor can inference even be made, that operation of the intercooler at an inlet air temperature of 450°K actually occurs.[17]

The objection set forth in Rice's Additional Objection # 10 is overruled.

Rice's Additional Objections # 11, # 12 and # 13 essentially restate the objections of Additional Objections ## 9 and 10. These objections are therefore overruled.

15. Paragraph 36 of the Rice Declaration also includes reference to Exhibit C of the Elliot Declaration. However, nowhere does Rice make a specific reference to reliance on any particular item of evidence contained in Exhibit C.

16. *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1047–48 (Fed.Cir.2000) ("Thus, the expert must set forth the factual foundation for his opinion—such as a statement regarding the structure found in the accused product—in sufficient detail for the court to determine whether that factual foundation would support a finding of infringe-

ment under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the nonmovant.") This Rice failed to do.

17. Rice's Additional Objection # 10 further advances an argument that the Report ignores paragraphs 41–55 of the Rice Declaration. Rice Objections at 23. Rice's opinion as to the existence of the design rule limitation is only contained in paragraphs 35–36. The factual basis for it is set forth only in paragraph 36. Rice does not indicate that a factual foundation for his opinion exists in paragraphs 41–55 of the Rice Declaration.

Rice's Additional Objections # 3, # 5, # 14, # 15, and # 16 object to certain semantics in the Report. These objections are overruled.

Rice's Additional Objections # 6, # 8, # 17 and # 18 make objection that the Report fails to credit all of Rice's evidence and to draw justifiable inferences from that evidence. These objections are overruled as merely restating previous objections.

Finally, Rice's Additional Objection # 2 makes objection that the Report fails to consider or give appropriate weight to Rice's own interrogatory responses, including Amended Response to Interrogatory No. 2 appended to the Elliott Declaration as Exhibit C. Rice points to paragraphs 36–53 of the Rice Declaration and paragraph 11 of the Wilson Declaration. While the Elliott Declaration is cited in the declarations, no specific portion thereof is identified. Specifically, in paragraph 36 of the Rice Declaration, wherein Rice's opinion of the existence of the design rule limitation in the WR–21 is given, no specific factual foundation for the opinion is indicated to be within the Elliott Declaration, Exhibit C. A review of Amended Response to Interrogatory No. 2 reveals only Rice's infringement contentions. As to the absolute temperature ratio, the response merely states the same factual foundation set forth in the Rice Declaration. The objection of Rice's Additional Objection # 2 is overruled.

Rice's objections to the claim constructions for the "counteflow limitation" and the "design rule limitation" have been addressed above. These objections are overruled.

## CONCLUSION

Accordingly, Rice's objections to the Report and Recommendation are **OVER-** **RULED** and Rolls–Royce's Motion for Summary Judgment of Non–Infringement of U.S. Patent No. B1 4,896,499 is **GRANTED.**

So **ORDERED.**

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

LOVE, United States Magistrate Judge.

Before the Court is Defendant Rolls–Royce, PLC's ("Rolls–Royce") Motion for Summary Judgment of Non–Infringement of U.S. Patent No. B1 4,896,499 ("the '499 patent") (Docket No. 137). Having considered the motion and Plaintiff Ivan G. Rice's ("Rice") response and having heard oral argument on April 3, 2007, the Court **RECOMMENDS** that Roll–Royce's motion be **GRANTED.**

## BACKGROUND

The '499 Patent is entitled "Compression Intercooled Gas Turbine Combined Cycle" and is directed to a power system having a "twin spool" gas generator and a power turbine. The gas generator has a low pressure turbine and a high pressure turbine with coaxial shafting to drive a low pressure compressor and a high pressure compressor. An external intercooler is positioned between the low pressure compressor and the high pressure compressor to boost efficiency. The intercooler cools air flow using a counter-flow coolant. The cooled air that is introduced to the inlet of the high pressure compressor has a greater density than the air compressed by the low pressure compressor. As a consequence of the greater density of the air, the flow area of the low pressure compressor is increased in proportion to the decrease in the absolute temperature.

## CLAIM CONSTRUCTION

The only claim asserted in this case is Claim 1. Claim 1 is set forth below with the terms relevant to this opinion in underlined text:

In a power producing system comprising a twin spool gas generator and a power turbine, said gas generator having a low pressure compressor driven by a low pressure turbine, a high pressure compressor driven by a high pressure turbine, a combustor positioned between said high pressure compressor and said high pressure turbine, said power turbine positioned downstream from said low pressure turbine, the improvement being characterized in that: said high and low pressure turbines being axially positioned and independently rotatable for driving said high and low pressure compressors respectively by means of concentric coaxial outer and inner shafting respectively said gas generator including at least one externally mounted intercooler positioned between said low pressure compressor and said high pressure compressor, at least one compressor outlet duct from said low pressure compressor communicating with said intercooler and at least one return duct from said intercooler communicating with said high pressure compressor, wherein said compressor outlet and return ducts and connections between said compressors and said intercooler are provided between said axially positioned low and high pressure compressors for *air flow to and from said intercooler in counterflow with coolant,* said outlet duct being configured to radially expand said air flow to a low velocity and said return duct being configured for low radial flow return velocity to said high pressure compressor, *the high pressure compressor having an inlet flow area directly proportional to the outlet flow area of the low pressure compressor, and inversely proportional to the absolute temperature ratio between the high temperature airflow discharged from the low pressure compressor compared to the low temperature air flow from the intercooler passing to the inlet area of the high pressure compressor.*

In the Court's claim construction opinion (Docket No. 128), the Court construed the term "airflow to and from said intercooler in counterflow with coolant" as "the air flow and the coolant through the intercooler flowing in thermal contact and in opposite direction through a heat exchanger so that the temperature of the air flow closely approaches the temperature of the coolant at its inlet to the intercooler" ("the counterflow limitation"). Further, the Court construed the term "the high pressure compressor having an inlet flow area directly proportional to the outlet flow area of the low pressure compressor, and inversely proportional to the absolute temperature ratio between the high temperature air flow discharged from the low pressure compressor compared to the low temperature air flow from the intercooler passing to the inlet area of the high pressure compressor" to mean "a design rule applied to optimize the cross-sectional area of the air flow inlet of the high pressure compressor in relation to the cross-sectional area of the air flow outlet of the low pressure compressor for a predetermined operating condition of the intercooler (1) by having the areas increase or decrease together on a constant ratio basis between them and (2) by having the cross-sectional area of the air flow inlet of the high pressure compressor also increase or decrease in opposite to the ratio of the absolute temperature of the air flow at the cross-sectional area of the air flow outlet of the low pressure divided by the absolute temperature of the air flow at the cross-sectional area of the air flow inlet of the high pressure compressor (*i.e.,* the area increases as the ratio gets smaller

and decreases as the ratio gets larger), which can be expressed mathematically as: $A_{HPC} \propto A_{LPC} / (T_{LPC}/T_{HPC})$" ("the design rule limitation").

## APPLICABLE LAW

*Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.; Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

If the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must assert competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533

(5th Cir.1994). The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

*Infringement Law*

■ Infringement analysis "is a two-step process in which we first determine the correct claim scope, and then compare the properly construed claim to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1247–48 (Fed.Cir. 1998). Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed.Cir.1995). A determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact.[1] *Biovail Corp. Int'l v. Andrx Pharms, Inc.*, 239 F.3d 1297, 1300 (Fed.Cir.2001). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.Cir.1995). Any deviation from the literal claim language precludes a literal infringement finding. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir.2001).

---

**1.** Rice does not assert infringement under the doctrine of equivalents.

## ANALYSIS

The parties agree that Rice accuses Rolls–Royce's Type 45 WR–21 engine ("the WR–21") of infringing the '499 patent. In its motion, Rolls–Royce asserts that a reasonable fact finder could not find that the WR–21 contains the counterflow limitation and/or the design rule limitation.[2]

### The Counterflow Limitation

With regard to the counterflow limitation, Rolls–Royce argues, and Rice does not dispute, that the intercooler in the WR–21 is a two-pass crossflow, plate-fin heat exchanger. The air flow and coolant flow are perpendicular within the heat exchanger cores. After the coolant makes a first pass through the heat exchanger cores, the coolant reverses direction to make a second pass through the heat exchanger cores. The flow reversal takes place within a return pan that is on the side of a heat exchanger core.

Rolls–Royce argues that when the air flow and coolant are flowing through the heat exchanger cores, the air flow and coolant are not flowing in opposite direction, as the counterflow limitation requires. According to Rolls–Royce, the return pan simply directs and distributes the coolant from the first set of core coolant passages to the second set of core coolant passages.

In response, Rice asserts that this limitation is met because, according to Rice, the coolant flow direction is counter to the airflow direction at the return pan. In other words, as the coolant reverses di-

rection in the return pan and moves from the bottom of the intercooler to the top of the intercooler, the coolant is moving in a counter direction of the air flow as it moves from top to the bottom of the intercooler. Rice takes the position that the Court's construction does not require that all flow must be counter but is in fact satisfied by the portion of the flow moving in opposite directions at the return pan.

On the issue of the directional flow of air and coolant in the WR–21, the parties do not dispute the accused engine's structure. The dispute is whether the Court's construction requires that all of the flow be counter or whether the limitation is satisfied by a portion of the flow being counter at the return pan. Thus, the question of summary judgment turns on claim interpretation. *See K–2 Corp. v. Salomon, S.A.,* 191 F.3d 1356, 1362 (Fed.Cir.1999) (citing *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed.Cir. 1996) ("Where as here, the parties do not dispute the relevant facts regarding the accused product but disagree over [claim interpretation], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment.")).

The Court construed this term, in part, as requiring "the air flow and the coolant through the intercooler flowing in thermal contact and in opposite direction through a heat exchanger."[3] In construing this limitation, the Court focused on the schematic diagram provided in Figure 1 of the '499 patent.[4] Figure 1 shows all of the air flow

---

2. Rolls–Royce also asserts that the WR–21 lacks an externally mounted intercooler. Finding, as will be explained below, that the WR–21 lacks the counterflow limitation and the design rule limitation, the Court need not address whether the WR–21 contains an externally mounted intercooler.

3. For the purposes of this opinion, the Court assumes that when the coolant reverses direction in the return pan, it is in "thermal contact" with the air.

4. At the claim construction stage, Rice argued that Claim 1's recitation of air flow "to and from" the intercooler showed that it is the overall direction of the air flow between the

and all of the coolant flowing in opposite direction within the intercoolers 38 and 40. Nothing in Figure 1 or elsewhere in the specification provides for the possibility of anything but all of the flow being in an opposite direction.

In support of his contention that the counterflow at the return pan satisfies this limitation, Rice cites solely to conclusory expert contentions and a couple of documents referring to the heat exchangers as operating in "cross-counter flow." *See* Rice's Resp. at 13–14. Significantly, Rice does not cite to the patent to support his contention. Rice's evidence does not show that the counterflow limitation is satisfied by the counterflow at the return pan.

For the reasons expressed above, the Court concludes that no reasonable jury could find that the "counterflow limitation" as construed by the Court is found in the accused engine.

*The Design Rule Limitation*

 Rice as the non-moving party and having the burden of proof on infringement must offer evidence that the accused infringing WR–21 engine has a high pressure compressor (HPC) with an inlet flow area that is sized (1) directly proportional to the low pressure compressor (LPC) outlet flow area and (2) inversely proportional to the absolute temperature ratio of the temperature of the airflow exiting the low pressure compressor to the temperature of the air flow from the intercooler passed to the inlet of the high pressure compressor $(T_{lpc} / T_{hpc})$.

To meet its burden, Rice relies upon the Declaration of Ivan Rice appended as Exhibit 3 to Rice's Response. *See* Rice's Resp. at 19, n. 44. Specifically, paragraphs 31 to 54 of the Rice Declaration contain Rice's evidence as to the design rule limitation. There is no dispute that the size of the LPC outlet flow area of the WR–21 is 1.64 times the size of the HPC inlet flow area. Or, in terms of the size of the HPC inlet flow area, it is 0.6 of the size of the LPC outlet flow area (i.e., $A_{hpc} / A_{lpc} = 0.6$). Thus, there is a direct proportion between the size of the LPC outlet flow area and the size of the HPC inlet flow area in the WR–21. This proportionality served as a set of initial conditions in the design of the WR–21. *See* Dec. of David A. Branch, Ex. 1 to Rolls–Royce's Mot. ¶¶ 47–49. Rice does not dispute Rolls–Royce's Statement of Material Fact (SMF) 19–24, which set forth an initial design condition of a direct proportioning of $A_{hpc} / A_{lpc} = 0.6$. Rice merely points out as to SMF 19–24 that whether the sizes of the $A_{hpc}$ and $A_{lpc}$ were pre-existing in an earlier engine is not material. Importantly, Rice purports to dispute RR's SMF 27, which sets forth the fact that $A_{hpc} / A_{lpc} = 0.6$ in the WR–21. However, in the Rice Declaration, paragraph 31, Rice agrees with and adopts the substance of Rolls–Royce's SMF 27. The Court concludes that there is no dispute as to SMF 27. Additional

compressors as established by the outlet and return ducts that is in counterflow with the coolant. The Court rejected this argument finding that heat exchange would only take place inside an intercooler where there is thermal contact. Thus, to one skilled in the art, reference to "in counterflow with coolant" would only have meaning in regard to the flow of air *through* the intercooler and not air flow that is to and from it. Figure 1 shows the air through ducts 36 and 42 from the low and high pressure compressors 24

and 44 respectively flowing in the same direction as the coolant through lines 68 and 70. As the Court noted in its *Markman* opinion, only the flow within the intercooler is consistent with the plain meaning of "counterflow" being in the opposite direction. This conclusion is consistent with the Court's conclusion here that there is no provision in the patent for anything other than all of the air and all of the coolant to flow in opposite direction.

initial design conditions are identified by Branch in Exhibit Q. *See* Branch Dec. ¶¶ 50–52. Rice does not dispute these facts.

The parties also do not dispute that sizing of the HPC inlet flow area in accordance with the design rule limitation is governed by Boyle's Law, which is set forth in the '499 patent at column 9, lines 1–15, which is essentially that P after V after = P before V before. Implicit in the design rule limitation is that the size of the HPC inlet flow area adheres to Boyle's Law with constant LPC and HPC speeds of rotation. Rice contends that at constant rotation speeds of the LPC and the HPC, the ratio of $T_{hpc}/T_{lpc}$ would also be 0.6 to comply with Boyle's Law (*i.e.*, $T_{lpc}/T_{hpc}$ =1.64). *See* Rice Dec. ¶ 31. Rolls–Royce does not appear to directly dispute Rice's contention, although it does dispute the implied proportionality constant of "1.0" used by Rice to reach his postulation as not complying with the Court's claim construction. *See* RR's Reply at pp. 21–23. Instead, Rolls–Royce points to evidence that performance data for the WR–21 at the 100% power design point exhibits that the ratio $T_{lpc}/T_{hpc}$ is 1.34. The Court will evaluate Rice's evidence of the design rule limitation on the Rice Declaration's postulation that the design rule limitation is met when $A_{lpc}/A_{hpc} = T_{lpc}/T_{hpc}$.

Rice advances no evidence that Rolls–Royce designed the WR–21 according to Boyle's Law. Rolls–Royce offers the Branch Declaration as evidence of the design methodology followed in developing the WR–21. Branch has personal knowledge of the design of the WR–21 and testified that, at the 100% power design point, the ratio $T_{lpc}/T_{hpc}$ is 1.34. Branch Declaration at ¶ 47. To account for the intercooler between the LPC and the HPC, which produces a reduced non-dimensional mass flow at the inlet to the HPC, Rolls–Royce relied upon aerodynamic compressor design practice and established the speed of rotation of the HPC to match the capacity of the HPC with the LPC. Branch Dec. ¶¶ 47–54. The Branch Declaration is evidence that the WR–21 was not designed on the basis of Boyle's Law. Rolls–Royce's SMF 25 embodies its position based on the Branch Declaration that, rather than re-sizing or optimizing the flow areas from the initial design conditions, standard compressor aerodynamic design practice was used and the HPC rotational speed was changed according to the change in temperature and density of the air flow attributable to the intercooler. Rice purports to dispute SMF 25. *See* Rice Resp. at 21. However, Rice identifies no evidence that controverts the Branch Declaration as it relates to SMF 25.

Of significance, during re-examination of the '499 patent, Rice distinguished the Quandt prior art on the basis that Quandt disclosed changing the rotational speed of the low pressure and high pressure compressors as a function of intercooler operation. Ex. 3 to Rolls–Royce's Br.. Thus, Rice disclaimed coverage of the design rule limitation as extending to adjusting compressor speed of rotation to match air flow between the LPC and the HPC to account for the change in air density attributable to an intercooler.

Rolls–Royce also submits through the Branch Declaration evidence of acceptance testing of WR–21 performance and a computer simulation of the performance of the WR–21. Branch Dec. ¶¶ 56–57; Ex. S to Rolls–Royce's Mot.. The test data shows that $T_{lpc}/T_{hpc} = 418.5/312.3 = 1.34$. To match the HPC compressor at the 100% design point to the lower temperature and higher density of the air flow attributable to the intercooler, the speed of rotation was set in accordance with the conventional mass flow function of aerodynamic com-

pressor design practice of $N/\sqrt{K}$, which results in an 18% reduction in speed from an initial design condition. Branch Dec. at ¶¶ 58–59.

Beyond disputing Branch's opinion of non-infringement in a general statement at paragraph 5 of the Rice Declaration, Rice nowhere controverts Branch's testimony as to the design methodology used by Rolls–Royce in establishing the structure of the WR–21 in regard to the HPC airflow inlet size. The whole of Rice's evidence of infringement consists of theoretical operating scenarios, which the Rice Declaration extrapolates into "a range of reasonable predetermined operating conditions." Rice Dec. at ¶ 41.

Rice's evidentiary showing is insufficient. First, Rice does not apply the Court's claim construction as to the design rule limitation. The Court's claim construction was "a predetermined operating condition" and not "a range of reasonable predetermined operating conditions." Second, the operating conditions postulated in the Rice Declaration (*see* paragraphs 36–40) are not shown to have any basis in any testing or computer model of the WR–21 made by either Rice or Rolls–Royce or anywhere else. Rice points to Exhibit E to the Rice Declaration as indicating that a conceivable LPC air flow temperature in the WR–21 is 450 K. But, nowhere does Exhibit E demonstrate that fact. Apparently, Rice relies upon the identification in Exhibit E of materials used in the intercooler, which can withstand such temperature. However, there is nothing as to an actual LPC air flow temperature applied to the intercooler of the WR–21. Exhibit K appended to the Wilson Declaration submitted by Rice does include WR–21 performance data. But the $T_{lpc}/T_{hpc}$ ratios are generally about 1.34 as testified by Branch. Moreover, none of the recorded values in Exhibit K show $T_{lpc}$ at 450 K.

Whether or not Rice is correct about the capability of the materials used in the intercooler to withstand a temperature at 450 K, it is not probative as to an actual LPC air flow temperature applied to the intercooler of the WR–21 at a predetermined operating condition of the intercooler, and is not probative as to the material fact of $T_{lpc}/T_{hpc}$ at a predetermined operating condition of the intercooler.

In order to produce a $T_{lpc}/T_{hpc}$ that approximates 1.64, Rice must use the unsupported THPC of 450° K and also use an air temperature exiting the intercooler at freezing (32°). This means that the intercooler must be capable of reducing 350° F air to 32° F (450° K–273° K = 177° K). Rice does not provide evidence that the intercooler is capable of such operation. Rice does cite to Exhibit T appended to the Branch Declaration. However, Exhibit T, which is a Technical Report on the WR–21, only indicates that a water/glycol coolant temperature can extend to 0° C. Thus, Rice's statement that "at least one lower temperature limit for low temperature air flow (air exiting the intercooler) is 273° K (0° C, 32° F)" is not supported. Exhibit T specifies an intercooler coolant temperature range; the temperature of the air flow exiting the intercooler is not discussed. Thus, again Rice's evidence is not probative. Regardless of what might be the temperature of the WR–21 intercooler coolant, it is not evidence of a temperature of air flow exiting the intercooler and is not probative as to the material fact of $T_{lpc}/T_{hpc}$ at a predetermined operating condition of the intercooler. Further, as to the capability of the intercooler, the only evidence of record is found in Exhibit K to the Wilson Declaration submitted by Rice, which shows the intercooler is capable of reducing air flow temperature by only about 100° K.

The Rice Declaration purports to demonstrate infringement of the design rule limitation. The Rice Declaration postulates several operating conditions of the WR–21 in regard to $T_{lpc}/T_{hpc}$ within an alleged range of several "reasonable predetermined (known) operating conditions of the intercooler." However, there is no showing of the factual foundation for any of those operating conditions. Thus, the Rice Declaration is insufficient to establish a genuine issue of material fact as to infringement of the design rule limitation. *See Novartis Corp. v. Ben Venue Labs., Inc.,* 271 F.3d 1043, 1050–51 (Fed.Cir. 2001).

In summary, nowhere does the Rice Declaration establish support for the underlying facts he relies upon for his ultimate opinion that the WR–21 meets the design rule limitation. As a result, the Rice Declaration fails to provide evidence sufficient to raise a genuine issue of material fact as to the issue of infringement so as to preclude summary judgment disposition of the issue in favor of Rolls–Royce. Rice's evidence of infringement of the design rule limitation provides no more than theoretical speculation raising, at best, a "metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

The undisputed facts show that the WR–21 does not have its LPC and HPC air flow areas sized in accordance with Boyle's Law such that $T_{lpc}/T_{hpc} = 1.64$ at a predetermined operating condition of the intercooler (*e.g.* at 100% power rating). Instead, conventional aerodynamic compressor design practice was used involving setting the rotational speed of the HPC, in consideration of a mass flow function, in order to match the HPC capacity to the LPC in view of the lower temperature and higher density of the air flow attributable to the intercooler. Thus, while the WR–21

engine has an HPC inlet flow area sized directly proportional to the LPC outlet flow area (*i.e.,* $A_{lpc} / A_{hpc} = 1.64$), the size of the HPC inlet flow area is not sized inversely proportional to the absolute temperature ratio of the temperature of the airflow exiting the low pressure compressor to the temperature of the air flow from the intercooler passed to the inlet of the high pressure compressor ($T_{lpc}/T_{hpc}$).

As alluded to above, another aspect of Rice's infringement contentions, which is reflected in the Rice Declaration, concerns the generalized expression of the design rule in the Court's claim construction as: $A_{hpc} \; \alpha \; A_{lpc}/(T_{lpc}/T_{hpc})$. This expression reflects the two proportionality factors specified in the claim language. Rice makes an observation that the generalized expression can be stated as a specific equation of: $A_{lpc}/A_{hpc} = \text{K} \; (T_{lpc}/T_{hpc})$, based on an assumption that an unstated constant can be a value "1.0." However, when the claim language is expressed in an equation form, there are two equations. One equation is $A_{hpc} = \text{K}_1 \cdot A_{lpc}$. The second equation concerns the matching of the ratio $A_{hpc}/A_{lpc}$ to the absolute temperature ratio $T_{hpc}/T_{lpc}$. Thus, $A_{lpc}/A_{hpc} = T_{lpc}/T_{hpc}$ obtains because it expresses Boyle's Law, not because of any assumed constant value of "1.0." The '499 specification supports the Court's analysis. In Fig. 4, the LPC is shown with a pitch line radius of $r_1$ and the HPC is shown with a smaller pitch line radius of $r_3$. Thus, $A_{lpc} = \Pi \; r_1^2$ and $A_{hpc} = \Pi \; r_3^2$; and $A_{hpc} = \text{K}_1 \cdot A_{lpc}$, where $k_1 = r_3^2/r_1^2$. This represents the direct proportion aspect of the design rule. In the example set forth in column 9, lines 16–26, the increase in the ratio $A_{lpc}/A_{hpc}$ of 1.41 matches the absolute temperature ratio $T_{lpc}/T_{hpc}$, where $T_{lpc} = 759.67$ and $T_{hpc} = 539.67$, to result in $759.67/539.67 = 1.41$. As stated, the pitch line radius $r_1$ would increase by 19% to $r_2$, which is the square root of 1.41.

Accordingly, the Court concludes that no reasonable fact finder could find that the HPC inlet flow area of the WR–21 meets the "design rule limitation."

## CONCLUSION

For the reasons discussed above, the Court concludes that Rolls–Royce is entitled to summary judgment on literal infringement as a matter of law. Therefore, the Court **RECOMMENDS** that Rolls–Royce's Motion for Summary Judgment of Non–Infringement be **GRANTED.**

A party's failure to file objections to the findings, conclusions, and recommendations contained in this Report within ten days after service with a copy thereof shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) *(en banc).*

**So ORDERED.**

May 4, 2007.